(115 App. Div. 735)

### LEWIS et al. v. CITY OF BUFFALO.

(Supreme Court, Appellate Division, Fourth Department. November 14, 1906.)

DISCOVERY—EXAMINATION OF PARTY BEFORE TRIAL—PURPOSE.

Plaintiffs sued to compel the abatement of an alleged nuisance on certain lands owned by them by the wrongful acts of defendants in obstructing the flow of a natural water course. Plaintiffs applied before trial for the examination of the engineers of defendant city, and alleged that the city through its officers had made certain investigations relating to plaintiffs' cause of action, some of which had been put in the form of maps, some in the shape of records, and some in the minds of its officers, and that it was essential that such information be given plaintiffs, so that their experts might analyze the same and satisfy themselves as to its correctness. *Held*, that plaintiffs were not entitled to such examination for the purpose for which it was desired.

Appeal from Special Term, Erie County.

Action by Loren L. Lewis and others, as trustees of the estate of Rufus L. Howard, deceased, against the city of Buffalo and others. From an order denying a motion to vacate an ex parte order directing the deputy commissioner engineer of defendant city of Buffalo and his assistant engineer to appear for examination before a referee, and there to produce certain official maps, records, and data with reference to certain floods, the city appeals. Reversed.

The action was commenced in January, 1906, to compel the abatement of an alleged nuisance upon certain lands owned by the plaintiffs, claimed to have been caused or occasioned by the wrongful acts of the defendants, and to perpetually enjoin them from further interfering with plaintiffs' rights in the premises. Also to recover the damages sustained because of such alleged illegal acts. In the complaint it is alleged, in substance, that the plaintiffs are the owners of a large and very valuable tract of land in the city of Buffalo which is contiguous to, or in the vicinity of, Buffalo river, Cazenovia, Hurlbert, and Howard creeks and other natural water courses which flow in or through said city; that for many years the defendants have from time to time obstructed, interfered with, and changed the natural channel of said waterways, and have changed their banks in such manner as to cause the waters which would naturally flow therein to be discharged upon and to overflow plaintiffs' lands, and so as to cause refuse and sediment to be deposited thereon in such manner as to create a nuisance and to greatly damage the same. Each of the defendants answered the complaint and denied that it had done any illegal or unlawful act which resulted in damage to the plaintiffs. When the ex parte order directing the examination of the witnesses referred to and the production of the maps, records, etc., was obtained, there was presented to the justice the pleadings and the affidavits of Gibson Howard and E. C. Randall. Mr. Howard in his affidavit, after stating the alleged cause of action, practically repeating the allegations of the complaint, states, in substance: That the plaintiffs desire to examine the city's engineers because they have gathered the data and prepared the flood records of the city and have the same in their custody, and that their testimony is material and is necessary in order to enable the plain-

tiffs safely to proceed to trial. That the information so acquired and in the possession of the defendant city's officers cannot be obtained from any other source. The purpose of the examination, as stated in said affidavit, is "to ascertain from defendant's officers who made the observations and gathered the data as to the floods mentioned above, the extent of their observation and knowledge, and whether or not the profile and area maps above mentioned are correct, and to enable the plaintiff to corroborate said witnesses by other witnesses and verify the information obtained and records made by said Morse and said Norton. That the engineers in employ of the plaintiffs may study the data and the facts and evidence given by said defendant, and its source, and show when and how the defendant diverts the waters of said river and said creeks and discharges them upon the plaintiffs' land, and how long they remained there. It is necessary to get such evidence before the trial and marshal said facts, so that expert witnesses in behalf of the plaintiffs may study the data and evidence given by said defendant and its officers, and be able in that manner to show the extent that each defendant contributes to the floods that create the nuisance as in the complaint mentioned. That such facts are solely within the knowledge of the defendant, not within the knowledge of the plaintiffs, and that this is the only source from which such evidence can be obtained, because it is the only accurate record kept by any person, and that the plaintiffs are unable to get it in any other way, except upon and in connection with the examination of the defendant and its officers. That the production of said profile and area maps and the examination of the defendant and its officers on the trial will not give expert witnesses time or opportunity to examine the same and by their evidence aid the court in passing upon the facts." There was also presented to the justice the affidavit of the plaintiffs' attorney, which states in substance that he requested the deputy commissioner engineer to furnish to him copies of said maps, and that he refused so to do.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

Samuel F. Moran, for appellant.
Edward C. Randall, for respondents.

McLENNAN, P. J. We think the moving papers wholly fail to show any proper ground upon which the order in question can be based. The substance of the allegations is that the defendant, the city of Buffalo, through its officers, has caused certain investigations to be made relating to plaintiffs' alleged cause of action against the defendant, and that some of the information thus obtained has been put in the form of maps, that some is in the shape of records, and some in the minds of such officers. And the plaintiffs allege that it is desirable, indeed essential, that all such information should be given to them, so that, among other things, their experts may study and analyze the same and thus be sure that it is correct.

There is no authority for granting such an examination for such a purpose. We think it is not the law that a defendant, who, for the purpose of defending an action threatened to be brought against him, investigates and as a result learns certain facts relating to such cause of action, may be compelled to give such facts and the result of such investigation to his adversary. If the maps, records, etc., are public records, the plaintiffs have the right to examine and inspect them at all reasonable times; but the custodian or officer making them may not be examined to the end that it may be ascertained whether or not the officer making them made them correctly. So far as appears, the plain-

tiffs had the same opportunity to make the investigations which the defendant did make, could have made maps and a record of the data and facts found, exactly as the defendant is alleged to have done. Every illegal or wrongful act alleged to have been done by the defendants or either of them was done openly and with the knowledge of the plaintiffs. The result of such acts was equally notorious. The fact that the defendant noted such acts and made a record of the same or of the results flowing therefrom does not entitle the plaintiff to the same. Attention has not been called to any case which holds that under such circumstances a party may be compelled to disclose to his adversary the facts within his knowledge thus obtained.

The order appealed from should be reversed, with $10 costs and disbursements, and the motion granted, with $10 costs.

Order reversed, with $10 costs and disbursements, and motion granted, with $10 costs. All concur.